# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Cortez Lyons (#R-47483), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 CV 9564 |
| | ) | |
| v. | ) | |
| | ) | Judge James B. Zagel |
| A. Vergara, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cortez Lyons, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, officials at the Stateville Correctional Center, violated Plaintiff's constitutional rights by denying him due process, by denying him equal protection, and by subjecting him to cruel and unusual conditions of confinement. More specifically, Plaintiff alleges that he received a harsher punishment for fighting than the cellmate who had allegedly attacked him; he additionally maintains that he endured inhumane living conditions in the segregation unit. This matter is before the Court for ruling on the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied altogether, and Defendants' motion for summary judgment is granted only in part.

## I. SUMMARY JUDGMENT STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether there are factual questions, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Kampmier v.*

*Emeritus Corp.*, 472 F.3d 930, 936-937 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## II. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

Neither Plaintiff's motion for summary judgment nor his response to Defendants' motion for summary judgment comports with Local Rules. "Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (quoting *Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1107-08 (7th Cir. 2004)). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014) (Kim, Mag. J.) (*aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Morrow v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citing *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) (inter alia)).

Plaintiff's motion for summary judgment does not include a statement of undisputed material facts. And even if Plaintiff was unfamiliar with Local Rules governing summary judgment despite having brought two prior civil rights actions in this district, Defendants made him aware of summary judgment requirements when they filed their cross-motion. Defendants filed and served on Plaintiff a Local Rule 56.2 Notice in conjunction with their own motion for summary judgment. *See* Dkt. No. 54, "Notice Pursuant to Local Rule 56.2." That notice explained in detail the obligations of a party opposing summary judgment, as well as the consequences of failing to comply with the rules.

Notwithstanding Defendants' admonition, Plaintiff's statements of facts suffer from multiple deficiencies. First, many of Plaintiff's factual assertions are unsupported by citations to

2

the record.  The Local Rules require the parties, in pertinent part, to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(a)(3) (N.D. Ill.)  The Court is not required to comb the record to locate relevant information. *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted); *see also Hemsworth v. Quoteswmith.com, Inc*., 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies.").

Second, Plaintiff's motion and his response to Defendants' Statement of Facts impermissibly blend facts with legal arguments.  Legal arguments, suppositions, and conclusions of law are not "facts."  *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts.").  Nor is the "response to a statement of facts ... the place for purely argumentative denials, and courts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'"  *Almy v. Kickert Sch. Bus Line,* No. 08 CV 2902, 2013 WL 80367, at *2 (N.D. Ill. Jan 7, 2013) (Dow, J.) (internal citation omitted) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 529 (7th Cir. 2000)).

Third, the Court has disregarded Plaintiff's factual assertions that conflict with his sworn deposition testimony.  "[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions."  *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A&E Oil, Inc*., 503 F.3d 588, 592 (7th Cir. 2007)).  "A deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies."  *Abraham v. Washington Group Intern., Inc.,* 766 F.3d 735, 741 (7th Cir. 2014) (citations omitted).  Consequently, Plaintiff cannot now deny, for example, that his cellmate sustained numerous stab wounds in the course of the altercation at issue.

Fourth, in responding to Defendants' statement of facts, Plaintiff sometimes added information that should have been set forth in a separate statement of additional facts pursuant to Local Rule 56.1(b)(3)(c)  *See, e.g., McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998); *De v. City of Chicago*, 912 F. Supp. 2d 709, 714-15 (N.D. Ill. 2012) (collecting cases).  In several instances it is not even clear whether Plaintiff is admitting or disputing Defendants' asserted facts.

Fifth, a layperson may not testify about matters involving medical, technical, or other specialized knowledge.  *See* Fed. R. Evid. 701, 702.  Thus, the Court has taken into account Plaintiff's basic representations that, for example, he vomited immediately after drinking F-House

tap water. But the Court has discounted those statements that call for a medical or technical expert, such as that the mold on the wall caused headaches or that Stateville's pipes somehow contaminate the facility's drinking water. Plaintiff lacks the necessary qualifications to express his personal analysis of such specialized matters.

With the above standards in mind, the Court has incorporated Plaintiff's factual assertions to the extent that he could properly testify about the matters asserted, so long as those representations would be admissible at trial and have bearing on the Court's analysis. The following facts, all supported by the record, are undisputed for purposes of the summary judgment motion [or the Court has noted instances of conflicting evidence]:

### III. RELEVANT FACTS

Plaintiff Cortez Lyons is an inmate in the custody of the Illinois Department of Corrections (hereinafter, "IDOC"). (Defendants' Exhibit A to their Motion for Summary Judgment, Complaint, at p. 2.) Plaintiff has been incarcerated at the Stateville Correctional Center since September 2013. (*Id.*; Defendants' Exhibit B, Deposition of Cortez Lyons, at p. 12.) Defendants Ambosis Vergara, William Shelvin (or Shevlin), Jerry Baldwin, and Charles Best were all correctional officers at Stateville at the time of the events giving rise to this action. (Complaint, p. 2.) Defendant Terry Williams was Stateville's warden at all times relevant. (*Id.*) Defendant Salvador Godinez was the Director of the IDOC during the relevant time period. (*Id.*)

On April 24, 2014, Plaintiff had a row with his cellmate, Hector Santiago. (Lyons Dep., p. 13.) Plaintiff contends that Santiago was the aggressor, and that Santiago was bigger and stronger than he.[1] (Complaint, p. 4.) According to Plaintiff, Santiago choked him, pushed him up against a wall, and tried to stab him in his hand with an ink pen, although the pen admittedly caused no damage. (*Id.*) Plaintiff asserts that he only defended himself from attack. (*Id.*)

During the struggle, Santiago sustained approximately thirteen stab wounds from the pen. (Lyons Dep., pp. 14, 19-20.) Following the altercation, the inmates were taken to the health care unit for medical treatment. (*Id.*, p. 14.) Santiago received medical attention for his wounds, while Plaintiff declined medical attention, as he had sustained no injuries in the fight. (*Id.*, pp. 14-15.)

---

[1]In fact, the IDOC website reflects that Plaintiff is 6' tall, weighs 200 pounds, and was born in 1987. *See* https://www.illinois.gov/idoc/OFFENDER/Pages/InmateSearch.aspx. Hector Santiago is 5' 8," sixteen years Plaintiff's senior, and weighs 199 pounds, at least as of August 2016. *Id.*

4

About five to ten minutes later, Defendant Vergara, an Internal Affairs officer, interviewed Plaintiff about the incident. (*Id.*, pp. 15, 19.) During the interview, Vergara advised Plaintiff of the allegations against him, informed him about the extent of Santiago's injuries, and gave Plaintiff the opportunity to recount his version of the events that had taken place. (*Id.*) This interview was Vergara's only contact with Plaintiff in connection with this matter. (*Id.*) Defendant Shelvin was present during Plaintiff's interview with Vergara. (*Id.*, p. 21.)

Following the interview, Shelvin issued Plaintiff a disciplinary ticket charging him with fighting and assault. (*Id.*, pp. 20-21.) As a result of the pending disciplinary proceedings, correctional officials transferred Plaintiff to the segregation unit's F-House. (*Id.*, p. 24.)

On May 5, 2014, Plaintiff appeared before a prison disciplinary committee. (Defendants' Exhibit C, Adjustment Committee Final Summary Report.) Defendants Best and Baldwin served on the hearing committee. (*Id.*) At the hearing, Plaintiff pleaded guilty to fighting, but not guilty to the assault charge. (Lyons Dep., p. 35-36.) Plaintiff again related his account of what had transpired with Santiago. (*Id.*) Plaintiff admitted that he had stabbed Santiago an unknown number of times, but stated that he had done so only after Santiago tried to stab him first. (*Id.*, p. 36.) Plaintiff requested no witnesses. (Defendants' Exhibit C.)

After hearing the evidence, Best and Baldwin found Plaintiff guilty of both fighting and assault. (*Id.*) The hearing officers imposed a penalty of one year in segregation, a one-year demotion to "C-grade," and one year of commissary restriction. (*Id.*) Plaintiff gathers, based on a conversation with Santiago in the segregation unit, that the latter had to spend only thirty days in segregation for fighting. (Lyons Dep., pp. 20, 38.) Plaintiff makes this admitted "assumption" based on his general knowledge that the "standard" IDOC penalty for fighting is thirty days in segregation. (*Id.*, p. 39.) Plaintiff spent the next year in F-House segregation other than when he had a furlough in May 2014 for an operation. (*Id.*, pp. 28, 62.)

Plaintiff's first cellmate in segregation, from Aril 25, 2014, until the middle of August 2014, was Marvin Molina. (*Id.*, p. 31.) Normally, inmates who arrive in segregation are issued a "bedroll" that contains bedding, socks, and underwear. (*Id.*, p. 41.) But when Plaintiff moved in, he did not receive a bedroll or fresh sheets. (*Id.*) Authorities provided Plaintiff only with a blanket and mattress upon his assignment to segregation. (Defendants' Exhibit A-1, Grievance Dated August 19, 2014.) Plaintiff found that there were already sheets on his bed in his new cell. (Lyons Dep., pp. 32, 40.) Plaintiff believes that Molina's previous cellmate had slept on the sheets left for him. (Plaintiff's Exhibit 3, Offender Grievance, at p. 2.) Plaintiff has sensitive skin. (Lyons Dep., p. 41.) He thought that the dirty sheets caused his face to break out. (*Id.*) Plaintiff did not seek medical attention for the breakout. (*Id.*, p. 43.) In Plaintiff's experience the sheets in the segregation unit were generally dirty and in poor condition. (*Id.*, pp. 26, 55.)

5

Plaintiff claims that correctional officials also failed to provide him with t-shirts, socks, or underwear. (*Id.*, p. 24; Sharif Affidavit, ¶ 2.) He was issued only a jumpsuit to wear. (Lyons Dep., p. 27.) The commissary restriction prevented him from buying clothing or accessories from the prison store. (*Id.*, p. 48.) In response to Plaintiff's grievance requesting clean sheets, socks, t-shirts, and underwear, correctional officials supposedly told him that none of those items was available. (Complaint, p. 5.) Plaintiff never received a bath towel while in segregation, (Lyons Dep., p. 27), but he was eventually able to purchase a wash cloth. (*Id.*, p. 54.) In order to dry off after his weekly shower, Plaintiff had to resort to using his jumpsuit or otherwise "compromise." (*Id.*, p. 26.)

In mid-August 2014, Plaintiff moved in with inmate Jamal Shariff. (*Id.*, p. 32.) Plaintiff still had the same, dirty sheets from when he had first arrived in segregation. (Plaintiff's Exhibit 13, Affidavit of Jamal Sharif, ¶ 1.) Shariff provided Plaintiff with underwear, t-shirts, and socks to wear. (Lyons Dep., pp. 29, 31, 44.)

No prison employee supplied Plaintiff with cleaning materials such as disinfectant or bleach to clean his cell even once during his year in segregation. (*Id.*, p. 70.) Plaintiff used regular body soap to clean his cell. (*Id.*, p. 71.) The cell was "filthy." (Plaintiff's Response to Defendants' Local Rule 56.1(a)(3) Statement of Facts ("SOF"), ¶ 32.)

Defendants report that during the time period that Plaintiff was confined to F-House, a company called "Critter-Ritter" sprayed inside the individual cells on a monthly basis to combat pests. (Defendants' Exhibit D, Warden's Bulletin #2010-104 (announcing the launch of the interior cell spraying program beginning in 2010)); Defendants' Exhibit E, "Contractual Service Employee Sign In Sheet.") Plaintiff refutes this assertion, insisting that the exterminator sprayed only outside and around the cells. (Plaintiff's Response to Defendants' SOF, ¶ 34.) Plaintiff maintains that his cell was infested with cockroaches, spiders, earwigs, and mice. (Complaint, p. 5.) Plaintiff once witnessed his cellmate having to have a cockroach removed from his ear canal. (Plaintiff's Exhibit 9, Offender Grievance.) Plaintiff lost sleep out of fear of waking up to find a bug in his own ear, and told officials that he stuffed tissue in his ears before going to bed. (*Id.*)

In the same grievance concerning pests, Plaintiff additionally complained that his cell had "shredded" paint, mold and rust around the sink, and that the water was "yellow." (*Id.*) The water became clear if Plaintiff let the faucet run awhile. (Lyons Dep., p. 67.) Plaintiff asserts that the water tasted "strange." (Plaintiff's Response to Defendants' SOF, ¶ 42.) Sometimes Plaintiff vomited immediately after he drank water from the tap. (*Id.*, p. 72; *see also* Plaintiff's Exhibits 9, 16.) Plaintiff also allegedly suffered from headaches and a general malaise after drinking the water. (Plaintiff's Response to Defendants' SOF, ¶ 40; Exhibit 9.) Plaintiff is able to drink other beverages besides water, such as milk and juice, every day. (*Id.*, pp. 72-73.)

Plaintiff has a history of stomach ailments that pre-date his arrival at Stateville. (*Id.*, p. 79.) Plaintiff has no way of knowing whether any current stomach ailments result from his living conditions, or are organic in nature. (*Id.*, p. 79.) Plaintiff has never sought medical care at Stateville for any gastro-intestinal complaints. (*Id.*, p. 75.)

The City of Crest Hill supplies Stateville's water. (Defendants' Exhibit F, "Stateville Correctional Center Water Supply Quality Report.") Stateville's water is tested annually to monitor the levels of regulated contaminants in the drinking water. (*Id.*) As of 2014, the last year for which results are available, inspectors found no violations of the Safe Water Drinking Act. (*Id.*) Plaintiff therefore surmises that the issue must lie with Stateville's "water lines" because the water that came out of his faucet was discolored and tasted terrible. (Plaintiff's Response to Defts' SOF, ¶ 42.)

Plaintiff does not know what kind of mold was in his cell (*see* Lyons Dep. at p. 71), but he believes it was harmful and hazardous in the absence of evidence to the contrary. (Plaintiff's Response to Defendants' SOF, ¶ 43; *see also* Plaintiff's Exhibit 15, John Howard Association of Illinois' report of "Monitoring Visit to Stateville Correctional Center 2013," at p. 12.)

## IV. ANALYSIS

With respect to the punishment imposed on Plaintiff, there is no genuine dispute as to any outcome-determinative facts, and the Court finds that Defendants are entitled to judgment as a matter of law. Plaintiff cannot recover damages for a disciplinary conviction that has not been overturned. Furthermore, the record reflects ample reasons for Defendants to have imposed a stiffer punishment on Plaintiff than his cellmate. However, Plaintiff has demonstrated that triable issues of fact exist concerning whether Defendant Williams subjected him to conditions of confinement in the segregation unit that were so inhumane as to violate the Eighth Amendment.

### A. Disciplinary Due Process

Plaintiff cannot challenge his disciplinary conviction by way of a civil rights action. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006). This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 644-45 (1997). Until the sentence has been invalidated, the cause of action for damages simply

"does not accrue." *Heck*, 512 U.S. at 490. Plaintiff's convictions for assault and fighting preclude his claim that he was the victim in the altercation and that he was merely defending himself from attack. The Court will not, in the context of a Section 1983 action, re-evaluate the propriety of the adjustment committee's guilt finding. It is sufficient to note that there is no dispute that prison officials afforded Plaintiff full due process, *see Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), and that the disciplinary conviction was supported by "some evidence." *Santiago v. Veach*, 215 F. App'x 552, 553 (7th Cir. 2007) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985) (*inter alia*)).

### B. Equal Protection

Furthermore, the Court finds no merit to Plaintiff's claim that his charges and punishment were disproportionate to the discipline he thinks correctional officials may have imposed on Santiago. To begin with, Plaintiff has adduced no evidence showing that Santiago received thirty days for fighting, in contrast to Plaintiff's year in segregation for fighting and assault. To the contrary, Plaintiff concedes, "The record does not reveal what discipline plaintiff['s] cellmate received." *See* "Plaintiff's Opposing Motion to Defendants' Cross Motion for Summary Judgment" (Dkt. #57), at p. 5. In arguing that Defendants have failed to show that Santiago received the same punishment as he, Plaintiff misapprehends the parties' respective burdens at summary judgment. In order to survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Montgomery v. Am. Airlines*, 626 F.3d 382, 389 (7th Cir. 2010) (citations omitted). In other words, it was Plaintiff who was required to provide some evidence of Santiago's disparate punishment; Defendants had no obligation whatsoever to prove otherwise. In the absence of any evidence relating to Santiago's discipline, there is no question for the jury to decide.

Moreover, even if Plaintiff had shown that Santiago received a lesser punishment, it is not uncommon for offenders of equal culpability to receive different sentences. "The Constitution does not require that all inmates found guilty of the same offense receive identical sanctions." *Salazar v. Superintendent, Indiana State Prison*, No. 11 CV 0197 WL, 2012 WL 6681738, at *2 (N.D. Ind. Dec. 20, 2012). "[A]bsent evidence that any disparity in punishment was based upon a suspect classification (like race or religion), punishing inmates differently for the same offense violates the Equal Protection clause only if there is no rational connection between the punishments and the offenses." *Hill v. Davis*, 58 F. App'x 207, 209 (7th Cir. 2002) (unpublished decision) (citing *Holman v. Page,* 95 F.3d 481, 486 (7th Cir. 1996)). Different hearing boards, different inmate criminal and institutional histories, and other criteria can result in potentially different outcomes to disciplinary proceedings. Plus, Santiago's relative injuries certainly provided adequate justification for the imposition of a more severe penalty on Plaintiff. Even assuming (without finding) that Santiago struck first and that Plaintiff was only defending himself,

as he maintains, the fact remains that he emerged from the scuffle unscathed, while Santiago had to be hospitalized for his numerous stab wounds. Accordingly, Defendants Vergara, Shelvin, Best, and Baldwin are entitled to judgment as a matter of law on Plaintiff's claim that his punishment was unfair in comparison to Santiago's.

### C. Cruel and Unusual Conditions of Confinement

However, disputed facts relating to the conditions of Plaintiff's confinement must be resolved at trial. The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 664 (7th Cir. 2012). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14 CV 1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Farmer*, 511 U.S. at 832 ("[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care.") (citations omitted). However, to implicate the Eighth Amendment, the deprivation must create a serious risk to an inmate's health or safety, *see Farmer*, 511 U.S. at 835, which may be shown by conditions that create a sufficiently high probability of harm. *Thomas v. Illinois*, 697 F.3d 612, 615 (7th Cir. 2012). Even when an individual condition of confinement is not serious enough to violate the Constitution, conditions may cumulatively do so "when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)).

It should be noted that prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Rice*, 675 F.3d at 665 (citation omitted). Determining whether conditions violate an inmate's constitutional rights involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities;" and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* In the instant case, some of the individual deprivations about which Plaintiff complains (for example, a lack of undergarments) might not rise to the level of a constitutional violation. However, the totality of the conditions he describes are sufficiently grievous that a jury could find that he is entitled to relief under 42 U.S.C. § 1983—assuming, of course, that the trier of fact accepts Plaintiff's representations as true and discredits Defendants' evidence.

9

### 1. Liability on the Part of Supervisory Prison Officials

The Court finds that former IDOC Director Salvador Godinez is entitled to judgment as a matter of law. The record does not support a finding that Godinez was personally and directly involved with the administration of the segregation unit at Stateville, as required by *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (*inter alia*). Nor has Plaintiff demonstrated that the alleged violations of his constitutional rights occurred at Godinez' direction or with his knowledge and consent. *Id.* at 833-34. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted).

The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). At the summary judgment stage, Plaintiff was required to come forth with some evidence of Godinez' direct, personal involvement. *See, e.g., Phillips v. Caldwell*, 960 F.2d 151, at *2 (7th Cir. 1992) (unpublished opinion); *De La Paz v. Peters*, 959 F. Supp. 909, 914 (N.D. Ill. 1997) (Castillo, J.); *Moore v. Peters*, No. 91 CV 5883, 1994 WL 75231, at *4 (N.D. Ill. Mar. 9, 1994) (Lindberg, J.). In the absence of any such evidence, Godinez is terminated as a Defendant. As IDOC Director, Godinez was too far removed from day-to-day operations in Stateville's segregation unit for liability to attach.

However, the Court is satisfied that then-Warden Tarry Williams remains an appropriate Defendant with respect to Plaintiff's overall conditions claim. The U.S. Court of Appeals for the Seventh Circuit has recognized that (at least at the pleading stage) a court may infer the involvement of a senior official where the allegations (1) suggest that the plaintiff's "situation … [was] of the gravest nature," or (2) describe a situation that is "potentially systemic," as opposed to "clearly localized." *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996); *Lieberman v. Budz*, No. 00 CV 5652, 2010 WL 369614, *8 (N.D. Ill. Jan. 28, 2010) (Coar, J.). In the instant case, Plaintiff's grievances and the investigative report by the John Howard Association provided Williams with ample notice of sweeping deficiencies relating to F-House. Williams is the only one of the named Defendants who could be held to answer for the conditions about which Plaintiff complains.

### 2. Inadequate Clothing

It is entirely unacceptable if, as alleged, Plaintiff went without socks and underwear for months. However, the Court finds no authority for the proposition that inmates have a constitutional right to underclothing. Rather, prisoners have a constitutional right only to "adequate" clothing. *Farmer*, 511 U.S. at 832; *see also Rice*, 675 F.3d at 664. While the Court in no way condones furnishing Plaintiff with only a jumpsuit and no more, his nakedness was covered, and there is no allegation that he was subjected to undue cold. Under the circumstances of this case, the Court finds that the matter does not implicate the Constitution.

### 3. Pest Infestation

With regard to the alleged pest infestation in F-House and Defendants' attempts to rectify the problem, there are disputed issues of material fact with regard to both the objective and subjective elements of the deliberate-indifference analysis. "[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have …, and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas*, 697 F.3d at 614.

In the case at bar, Plaintiff claims that his segregation unit cells were virtually overrun with pests. He alleges infestation by cockroaches, spiders, earwigs, and mice. Plaintiff additionally contends that because he witnessed his cellmate having to have an insect removed from his ear canal, Plaintiff suffered from insomnia due to his great fear of experiencing the same trauma. Both inmates purportedly slept with tissue in their ears to ward off bugs. Cases with facts similar to or not much worse than Plaintiff's have survived summary judgment. *See. e.g., White v. Monahan*, No. 07 CV 437, 2013 WL 587511 at *8 (N.D. Ill. Feb. 14, 2013) (Lee, J.); *Barbosa v. McCann*, No. 08 CV 5012, 2011 WL 4062469 at *6 (N.D. Ill. Sept. 12, 2011) (Pallmeyer, J.). In *White*, the inmate presented evidence to allow a jury to find that "his cells were infested with cockroaches, ants, wasps, bees, spiders, gnats, and mosquitoes" for a four-year period, where he purportedly often awoke with red welts from insect bites and estimated that he had been treated ten times for infected bites. *White*, 2013 WL 587511 at *8. In *Barbosa*, evidence in the record indicated the inmate could prove that insects and cockroaches were "rampant," that there were so many that he could sleep only a few hours at night, and that bugs or mice crawled on him and bit him. *Barbosa*, 2011 WL 4062469, at *6. Although the

court ultimately determined that the broad efforts at pest extermination established the absence of deliberate indifference, *Barbosa*, 2012 WL 4471218 at *3, the infestation problem was sufficiently serious to satisfy the objective prong of the deliberate-indifference analysis.

The above cases are in line with the Seventh Circuit's 20-year-old analysis of this issue, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996), wherein a Cook County Jail inmate alleged that cockroaches were "everywhere," "crawling on his body (along with mice)" and "constantly awaken[ing] him." *Id.* at 1431. Although *Antonelli* addressed the initial review of a complaint, as opposed to a more fully developed summary judgment record, the Seventh Circuit indicated that a prolonged exposure to a significant pest infestation, if true, was a serious enough hardship to support a constitutional violation. *Id.* By contrast, allegations that an inmate "saw 'several' cockroaches crawling in his cell" over a six-year period and was twice bitten did not describe a sufficiently serious condition. *Sain*, 512 F.3d at 894. Here, Plaintiff's evidence, if believed by a trier of fact, could support a finding that the infestation problem was "serious," for purposes of constitutional analysis. The Court reiterates that on a motion for summary judgment, the Court of course makes no findings as to whether Plaintiff's description of the problem is accurate or credible. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (when addressing a motion for summary judgment, a court "may not weigh conflicting evidence or make credibility determinations"). The parties' dispute over the extent of the problem precludes summary judgment.

There are likewise material issues of fact with respect to Defendant Williams' subjective mindset. Defendants contend that they took reasonable steps to address the pest-infestation problem. According to Defendants' records, Critter Ridder (the prison's exterminator) sprayed the individual F-House cells on a monthly basis. *See* Defendants' Exhibit E, Contractual Service Employee Sign In Sheet. However, Plaintiff contradicts Defendants, with his witness swearing, "The bug men only spray[] outside the cell, never inside. Roaches crawl into our beds daily." (Sharif Affidavit II, ¶ 2.) Plaintiff also points out that a John Howard Association inspection a year earlier found that inmate reports of bird, rodent, cockroach, and spider infestations report were "common and credible." (*See* Plaintiff's Exhibit 15, John Howard Association of Illinois' report of "Monitoring Visit to Stateville Correctional Center 2013," at p. 12. [2]) The parties' dispute over where the exterminator sprayed and the

---

2 The report went on to state, "Since the visit, the exterminator contract has been expanded." (John Howard Assoc. Report at p. 12.) It should be noted that Plaintiff's complaint and summary judgment materials rely heavily on—and even appear to parrot passages from-- the JHA report. To the extent Plaintiff relies on the report as proof that he personally experienced a serious pest problem, the report is of questionable evidentiary value. *See Gray v. Hardy*, No. 11 CV 7097, 2013 WL 5433280, at *5 n.6 (N.D. Ill. Sept. 30, 2013) (Pallmeyer, J.) (finding monitoring reports from John Howard Association insufficient to sustain plaintiff's conditions-of-confinement claim) (reversed on other grounds, --- F.3d ---, No. 13–

effectiveness of the monthly treatments creates a triable issue. A jury could find that Plaintiff was subjected to an unconstitutional condition of confinement and that Defendants acted with deliberate indifference to that condition. The Court thus denies summary judgment as to Plaintiff's claims that the pest-infestation problem at Stateville amounted to a constitutional violation.

### 4. Contaminated Water

A trier of fact must also resolve Plaintiff's claim that there was something wrong with the water in F-House. "It is the [correctional facility]'s constitutional obligation to provide [an inmate] with his basic needs, including adequate food and drinkable water." *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015); *see also Helling v. McKinney,* 509 U.S. 25, 33-34 (1993) (suggesting that inmates could successfully complain about unsafe drinking water without waiting for the onset of symptoms); *but see Jelinek v. Roth*, 33 F.3d 56, 1994 WL 447266, at *2 (7th Cir. 1994) (unpublished opinion) ("Nothing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell"). "The Constitution requires the state to provide an environment safe from excessive health hazards [although] not one free of minor contaminants." *Moore v. Monahan*, 428 F. App'x 626, 630 (7th Cir. 2011) (affirming dismissal of water quality claim on initial review) (citing *Carroll v. DeTella,* 255 F.3d 470 (7th Cir. 2001) (affirming summary judgment where prison water supply did not violate EPA standards)).

In the case at bar, Defendants have established that the City of Crest Hill supplies Stateville's water, that Stateville's water was tested on a monthly basis during the time period in question, and that test results showed no levels of contaminants (such as lead, copper, and radium) above acceptable Environmental Protection Agency ("EPA") standards. Plaintiff does not contest these findings; instead, he suggests that there must be a problem with the prison pipes and plumbing that carry the water to F-House Cells. Plaintiff knows that there must have been something wrong with Stateville's tap water because it tasted bad, and came out of the faucet yellow in color. *See* Plaintiff's "Opposing Motion" (Dkt No. 57), at p. 9; Sharif Affidavit II, ¶

---

3413, 2016 WL 3457647 (7th Cir. June 24, 2016); *see also Waldrop v. Wexford Health Sources, Inc.*, No. 12 CV 6031, 2015 WL 3537854, at *8 (N.D. Ill. June 3, 2015) ("Merely pointing to the existence of problems at the same facility as a *general* matter, as noted in other cases, is hardly an adequate means for a plaintiff to satisfy the burden at the summary judgment stage regarding *his* own particular claims.") (emphasis in original). *But see Daniel v. Cook County*, --- F.3d ---, No. 15-2832, 2016 WL 2016 4254934, at **10-11 (7th Cir. Aug. 12, 2016) (holding that the a 2008 U.S. Department of Justice's investigative report that contained findings of systemic flaws relating to the Cook County Jail's health care system were admissible under Fed. R. Evid. 803 in attempting to prove an unconstitutional custom, policy, or practice under *Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978)).

1.) Plaintiff says that he often felt headachy and ill—and even claims to have vomited on occasion—immediately after drinking the water. (Lyons Dep., p. 72.) If the water at Stateville was so foul as to nauseate Plaintiff the instant he imbibed it, then he may be entitled to damages. Again, a jury must decide how much credit to give to Plaintiff's contentions.

The trier of fact must also determine whether the alleged denial of drinking water rose to the level of a constitutional violation when Plaintiff was provided other liquids at mealtimes. "Milk is not water, but it is a substitute for water." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011) (affirming dismissal with prejudice after a prisoner-plaintiff was given four opportunities to set forth a plausible claim in connection with purportedly being denied food and water for several days). Evidently, Plaintiff's only access to water while in segregation was the tap water in his cell, both because he was unable to leave the cell and because he was not permitted to buy bottled water at the commissary. The parties agree that Plaintiff was able, at the very least, to drink milk and juice every day with meals, but that accommodation may have been inadequate.

### 5. Unclean Sheets

Plaintiff has no tenable cause of action under Section 1983 against Defendant Williams arising from being provided with sheets Plaintiff believes had already been slept in. Even if the matter rose to the level of a constitutional violation, the record does not support a finding Warden Williams—the only named Defendant in this action who could be responsible for general conditions in segregation—had any personal involvement with respect to the relatively minor matter of clean sheets. Unlike some of Plaintiff's more global claims, this issue was more of an individual problem.

Plaintiff has "no constitutional right to confinement in comfort." *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (citing *Martin v. Tyson,* 845 F.2d 1451, 1457 (7th Cir. 1988) (detainee had no right to a pillow, new tennis shoes, or frequent laundry service). Nevertheless, "a lack of sanitary conditions, including clean bedding, may qualify as a denial of the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 774 (quotation marks and citations omitted). Bedding that is merely uncomfortable or previously used by another is insufficient to state a constitutional claim. *See Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) (finding no evidence that failure to provide second mattress was deprivation of constitutional magnitude); *Barbosa,* 2011 WL 4062469, at *7. But having bedding that is foul-smelling or contaminated with bodily fluids may be sufficient. *See Townsend*, 522 F.3d at 774 (finding sound the parties' shared assumption that inmate having "wet, moldy, foul smelling mattress" for 59 days implicated Eighth Amendment). The Court need not decide whether a reasonable jury could conclude that a year with possibly unlaundered sheets violated Plaintiff's constitutional rights, because he has not named a Defendant who could be held responsible for

14

that unpleasant occurrence. There is no evidence that Plaintiff complained to any of the named Defendants that he needed fresh sheets, or that the named Defendants personally denied him clean sheets. Defendant(s) are entitled to judgment as a matter of law on this count.

### 6. Decrepit Surroundings

Plaintiff may pursue his claim that the segregation unit was "filthy" and moldy. Just as inmates have no constitutional right to aesthetically pleasing food, *see, e.g., McGee v. Monahan*, No. 06 CV 3538, 2008 WL 3849917, at *8 (N.D. Ill. Aug. 14, 2008) (Zagel, J.), Plaintiff had no right to a freshly-painted cell. The presence of rust and peeling paint did not implicate the Eighth Amendment. But inmates do have a constitutional right to a "healthy, habitable environment." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980)); *see also Brown v. Duvall*, No. 15 CV 1672, 2016 WL 3125002, at *5 (N.D. Ill. June 3, 2016) (Shah, J.) (same). The complete lack of cleaning supplies, coupled with unduly adverse conditions, can amount to a constitutional violation. *Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment when prisoner was deprived of basic sanitation items while in a cell for six days in which blood and feces were smeared on the walls and there was no running water to allow cleaning of the cell); *see also Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (allegations of similar conditions and no cleaning supplies stated a claim of unconstitutional conditions of confinement); *Budd*, 711 F.3d at 842 (45-day confinement in over-crowded cell with broken windows, no working sink, toilet covered in mold and spider webs, and no cleaning supplies amounted to unconstitutional conditions). Living for a year in unsanitary surroundings and no opportunity to clean could violate the Eighth Amendment.

Moreover, the presence of mold could give rise to a constitutional violation if it caused physical problems. *See, e.g., Thomas v. Cox*, 10 CV 0997, 2011 WL 3205660, at *4 (S.D. Ill. July 27, 2011) (citing *Munson v. Hulick*, No. 10 CV 0052, 2010 WL 2698279 (S.D. Ill. July 7, 2010)); *Mejia v. McCann*, No. 08 CV 4534, 2010 WL 653536 (N.D. Ill. Feb.22, 2010); *Moran v. Rogers*, No. 07 CV 0171, 2008 WL 2095532 at **1-5 (N.D. Ind. May 15, 2008)); *see also Board v. Farnham*, 394 F.3d 469, 486 & n.10 (7th Cir. 2005) (prisoners' claim that their asthma was worsened by exposure to mold and other substances was allowed to proceed). Plaintiff's witness verifies that Cell F-137 was a "dilapidated, mold-ridden, pest & roach-infested room…." (Sharif Affidavit II, ¶ 2.) Additionally, Plaintiff states that he was virtually never sick before moving to F-House, but that he immediately began to suffer from coughing fits, sneezing, and headaches once he arrived there. (Plaintiff's Exhibit 14, Second Affidavit of Jamal Sharif, ¶ 2.) A jury could find a connection between Plaintiff's environment and his health complaints. Again, however, because Plaintiff has not linked Defendant Williams to the denial of cleaning supplies, he will have to establish at trial that the segregation unit was so dirty and mold-ridden that Williams was effectively on notice that the unit was not fit for habitation.

### 7. Retaliation

In response to Defendants' motion for summary judgment, Plaintiff alludes for the first time to alleged retaliatory animus on the part of correctional officials. But a party may not raise new claims at the summary judgment stage. *See, e.g., Whitaker v. Milwaukee Cnty., Wisc.,* 772 F.3d 802, 808 (7th Cir. 2014); *Colbert v. Willingham*, No. 13 CV 2397, 2015 WL 3397035, at *10 (N.D. Ill. May 26, 2015) (Dow, J.). The Court will not entertain any retaliation claim at this late date.

### 8. Qualified Immunity

Finally, the Court finds that Defendant Williams is not entitled to qualified immunity under the circumstances of this case. "Qualified immunity shields government officials from liability under Section 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Courts must "consider whether the alleged facts demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gruenberg*, 697 F.3d at 578 (quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010)).

Applying these standards to the facts of this case, the law defining a prisoner's right not to be subjected to conditions like those Plaintiff describes were clearly established in 2014-15 for liability to attach to Williams. As discussed in each prior section of this opinion, case law largely supports a cause of action for each deprivation alleged. Qualified immunity therefore does not apply.

Furthermore, while a jury may find that Plaintiff suffered no physical injury, the lack of physical injury would not bar this lawsuit altogether. "[A] physical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself." *Calhoun v. Detella*, 319 F.3d 936, 940 (7th Cir. 2003); *see also Cassidy v. Ind. Dep't of Corr.*, 199 F.3d 374, 376-77 (7th Cir. 2000) (explaining that 42 U.S.C. § 1997e(e) limits relief available to prisoners if no physical injury alleged, but does not bar lawsuit entirely). Plaintiff may also still be entitled to recover punitive damages. *Myers v. Indiana Dep't of Corr.*, --- F.3d ---, No. 15-3196, 2016 WL 3619921, at *2 (7th Cir. July 5, 2016) (citing *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (explaining that prison officials who violate a prisoner's Eighth Amendment rights "are subject to those remedies that are not barred by section

16

1997e(e)—injunctive relief of course ... but also nominal and even (most courts have ruled) punitive damages").

V.  **Conclusion**

In sum, the Court concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's due process and equal protection claims. Even viewing the summary judgment record in the light most favorable to Plaintiff, no reasonable trier of fact could find that Defendants wrongfully punished Plaintiff with one year in segregation for fighting and assault. However, summary judgment is denied as to the majority of Plaintiff's claim that Warden Williams acted with deliberate indifference to purportedly cruel and unusual conditions of confinement.

For all of the foregoing reasons, Plaintiff's motion for summary judgment [#41] is denied. Defendants' cross-motion for summary judgment [#51] is granted in part and denied in part. The Court grants summary judgment in favor of Defendants on Plaintiff's due process and equal protection claims. At the close of the case, the Clerk will enter judgment in favor of Defendants Vergara, Shelvin, Baldwin, and Best pursuant to Fed. R. Civ. P. 56. Plaintiff may proceed to trial only against Defendant Tarry Williams, and only with regard to certain of his various claims relating to the conditions of his confinement in F-House segregation. The ruling date of August 30, 2016, at 9:15 a.m. is converted to a status hearing.

ENTERED:

Dated: August 26, 2016                    /s/ James B. Zagel